**GLOBAL LEGAL LAW FIRM**
Christopher Robin Dryden, Esq. (State Bar No. 234476)
James Cannon Huber, Esq. (State Bar No. 269488)
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
Telephone:   (888) 846-8901
Facsimile:    (888) 846-8902
Email:  cdryden@attorneygl.com
           jhuber@attorneygl.com

Attorneys for Plaintiff
Trendmood, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Trendmood, Inc., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>Samantha Rabinowitz, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Civil Case No.  2:20-cv-10877<br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

**GLOBAL LEGAL LAW FIRM**
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

Plaintiff, Trendmood, Inc. (referred to interchangeably as "Trendmood" or "Plaintiff") brings this action against Samantha Rabinowitz ("Rabinowitz" or "Defendant"), and states as follows:

## STATEMENT OF THE CASE/NATURE OF ACTION

1.      This case involves escalating behavior over time by Rabinowitz which has devolved from her alleged free speech, to statements likely constituting trade libel, to now full-blown libelous statements causing economic damage and reputational harm to Trendmood.

2.      Trendmood's Chief Marketing Officer, Ms. Sophie Shab ("Shab"), founded the Trendmood brand in or around 2012.   Trendmood's primary business operation has been as an internet influencer in the health, beauty, and cosmetics industries.   Trendmood delivers most of its marketing content through its social media accounts through platforms such as Instagram and Twitter which have been characterized as a viral sensation.   Since its inception, through Shab's beauty detective work, Trendmood has routinely been the leader in breaking news of new beauty collections, often before more traditional media outlets have heard a launch is coming. However, unlike most other internet beauty influencers the focus of Trendmood has not been Shab herself but rather the products which it promotes.   Trendmood's focus has been geared towards product information that a health, beauty, and cosmetics consumer primarily uses (including Shab) to make informed choices on such purchases.   The success of Trendmood has been meteoric and has resulted in beauty supply and media partnerships with Milani and Walgreens.

3.      Beginning in 2016, and intermittently to early 2020, Rabinowitz has relentlessly been a critic of both Shab and Trendmood from her perch as an online gossiper.   Most of that criticism has centered around her opinions of Trendmood's and Shab's business practices and beauty opinions.   Trendmood and Shab generally considered Rabinowitz's opinions to be merely poor taste, based on incomplete information, borne from jealousy at Trendmood and Shab's success and not worthy of

1  rebuttal.  However, this changed this past summer when Rabinowitz transitioned from
2  an internet gossiper to an aspiring competitor to Trendmood.   At that point
3  Rabinowitz's attacks became much more frequent, personal, without any foundation,
4  and eventually out and out falsities.

5    4.    Rabinowitz's recent attacks have been levied against Shab personally
6  characterizing her as either a racist or consorting with racists and waging false claims
7  about Trendmood and Shab allegedly committing crimes against Rabinowitz as
8  further described below in an effort to incite third persons to make Shab and
9  Trendmood the subject of a doxxing[1] campaign.   Rabinowitz's actions and false
10  statements have resulted in financial losses and reputational harm to Trendmood.
11  Despite Trendmood's request for Rabinowitz to voluntarily cease and desist her
12  actionable behavior all such requests been dismissed.

13                    **PARTIES AND JURISDICTION**

14    5.    At all times material to this action, Plaintiff Trendmood, Inc. is and was
15  a corporation organized under the laws of the State of California, with its principal
16  place of business in Los Angeles, California.

17    6.    At all times material to this action, Defendant Samantha Rabinowitz is
18  and has been a resident of the country of Canada, province of Ontario.

19    7.    This Court has jurisdiction under 28 U.S.C. § 1332(a) which provides
20  that a district court "has original jurisdiction of a civil actions where the matter in
21  controversy exceeds the sum of $75,000…and is between… citizens of a State
22  and citizens or subjects of a foreign country…"

23
24
25
26

27  [1] Doxing, or doxxing, is the Internet-based practice of researching and publicly broadcasting private
    or identifying information about an individual or organization. The methods employed to acquire
28  this information include searching publicly available databases and social media websites, hacking,
    and social engineering.

**GLOBAL LEGAL LAW FIRM**
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

3

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to this action occurred in this District.

## **BACKGROUND FACTS AND ALLEGATIONS**

9.    For the past decade, Trendmood (and Shab) spent a great deal of resources, including, time and money, in promoting itself as a leader in the health, beauty, and cosmetic industries to become a social media influencer.  The popularity of a social media influencer may be determined by how many persons are interested in the influencer's activities and thoughts. Over the last fifteen years or so "social networking" or "social media" applications and websites have been one of the go-to indicators of the level of popularity and public interest in persons and subject matters.

10.    Twitter is a social networking or social media service where users can publish or post messages and statements in order to interact with other users. The messages are called "tweets". Registered users can publish or post messages and statements, but non-registered users can only read them. Unless the registered users change the default setting, tweets can be read by any person who can access twitter.com. That is to say Twitter is not an application that is meant to make the user's messages more private. In the instant case the defendant had, and has, her Twitter messages, i.e., tweets, retweets, replies, and likes, accessible and displayed to any person who can access Twitter.

11.    Twitter also permits account holders to "follow" each other so that each user can be directly notified of posts made by other accountholders.  Twitter explains what a "Like" is in its "Help Center" webpage, "Likes are represented by a small heart and are used to show appreciation for a Tweet. You can view the Tweets you've liked from your profile page by clicking or tapping into the Likes tab."

12.    Twitter explains what a "Retweet" is in its "Help Center" webpage, "A Retweet is a re-posting of a Tweet. Twitter's Retweet feature helps you and others quickly share that Tweet with all of your followers. You can Retweet your own

**GLOBAL LEGAL LAW FIRM**
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Tweets or Tweets from someone else. Sometimes people type 'RT' at the beginning of a Tweet to indicate that they are re-posting someone else's content. This isn't an official Twitter command or feature but signifies that they are quoting another person's Tweet." As such, resending messages to the public and other users are made by the volitional act of the Twitter accountholder. Defendant's retweets were made by the volitional act of the defendant.

13. Generally, a hashtag, i.e., "#", that is followed by specific characters make content more discoverable on social media platforms and assist in engaging with other social media users based on a common theme or interest. Clicking on or searching any hashtag directs a user to every social media post using the same hashtag, whether Twitter, Instagram, Facebook, etc. Twitter explains what a hashtag is in its "Help Center" webpage,

> A hashtag—written with a # symbol—is used to index keywords or topics on Twitter. This function was created on Twitter, and allows people to easily follow topics they are interested in. Using hashtags to categorize Tweets by keyword
>
> • People use the hashtag symbol (#) before a relevant keyword or phrase in their Tweet to categorize those Tweets and help them show more easily in Twitter search.
>
> • Clicking or tapping on a hash tagged word in any message shows you other Tweets that include that hashtag.
>
> • Hashtags can be included anywhere in a Tweet.
>
> • Hash tagged words that become very popular are often trending topics.

14. Instagram is another social networking or social media service that allows users to upload videos and photos and uses hashtags to connect users in the same manner as Twitter. When one user wants to check on and routinely get updates

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

on another Instagram account holder, the user can "follow" another Instagram user, much like Twitter.

15.    Instagram uses what it calls "stories" for Instagram accountholders to connect with their followers more closely directly. Stories are posts of videos, photos and statements made by the Instagram account holder that are made directly available to the Instagram accountholder's followers and remain available for twenty-four hours. After an item is posted to the accountholder's story, those following are notified of the story post.

16.    And many times, these Instagram and Twitter posts/tweets, and reposts/retweets are discussed on Reddit.  Reddit is an American social news aggregation, web content rating, and discussion website. Registered members submit content to the site such as links, text posts, and images, which are then voted up or down by other members. Posts are organized by subject into user-created boards called "subreddits", which cover a variety of topics such as news, politics, science, movies, video games, music, books, sports, fitness, cooking, pets, and image-sharing. Submissions with more up-votes appear towards the top of their subreddit and, if they receive enough up-votes, ultimately on the site's front page. Despite strict rules prohibiting harassment, Reddit's administrators spend considerable resources on moderating the site.

17.    As stated above, Trendmood is one of the most recognized internet influencers in the health, beauty, and cosmetics industries.  Trendmood's Instagram account has over one million followers. As a result of such following, health, beauty, and cosmetics producers and distributors contract with Trendmood so that Trendmood may promote their respective products directly through their internet properties or as a referral partner to those companies directly.

18.    Specifically, Trendmood generates sales revenue by (a) placing links in different media collateral it publishes which in turn earn commission revenue for sales by its product partners generated through such links; (b) through affiliate marketing

**GLOBAL LEGAL LAW FIRM**
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

partners who publish Trendmood's and its product partners' offerings which includes a code designated to Trendmood for discounts on a purchase by a Trendmood follower; and (c) directly selling its signature Trendmood Box where it works with its brand partners for health, beauty and cosmetic products to curate boxes with those partners' associated products.   Needless to say, Trendmood's publications to its followers of health, beauty, and cosmetic which in turn derives its follower base are the genesis of its sales revenue and any disruption in that follower base results in lost revenue.

19.   As aforementioned, from 2016 to early 2020 Rabinowitz has been an online gossiper for various industries including *inter alia* the health, beauty, and cosmetics social media landscape. During that time Rabinowitz's prime marketing method has been to instigate controversy surrounding Trendmood and other competing social media influencers for the health, beauty, and cosmetics industries and critically deride their actions looking for ways to minimize their opinions or business methods as a way to gain a following.   In short, Rabinowitz is ultra critical of others in an effort to deprive them of goodwill.

20.   From approximately 2016 to early 2020 Rabinowitz consistently waged a "gossip campaign" toward Trendmood but each time Rabinowitz's public comments have been likely protected by free speech under the First Amendment of the United Stated Constitution.   Some examples of Rabinowitz's criticism of Trendmood has been to question (a) Trendmood's rights to pre-release product information related to its product partners' media campaign and product releases, (b) the quality of its media campaigns related to particular products including prohibited reproduction of its product partners' direct media collateral, and (c) whether it is making false claims in its marketing collateral.

21.   However, as further described below, Rabinowitz venom directed toward Trendmood veered from opinion to outright falsities beginning in mid 2020 when she transitioned from gossiper to attempted social media influencer competitor

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

**GLOBAL LEGAL LAW FIRM**
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

and has escalated to accusing Trendmood of committing actions amounting to a crime against her in an effort to boost her own brand and deprive Trendmood of its followers and thus its income.

22.     As to all of the Defendant's conduct above and below described, specifically since Defendant has published her statements on social networking sites, Trendmood has:

       a.     Lost followers on its Twitter account of at least 2,000 followers and is no longer getting 5,000 followers per month as Trendmood was prior to Defendant's statements;

       b.     Lost followers on its Instagram account at least 3,000 followers and is no longer getting 30,000 followers per month as Trendmood was prior to Defendant's statements;

       c.     Lost revenues from its product partners in the amount of $4,000 per month from reduced commissions from sales achieved through referrals to those partners and affiliate marketing relationships; and

       d.     Lost revenues from direct sales for Trendmood boxes in the amount of $6,000 per month.

## RABINOWITZ'S FALSE STATEMENTS

23.     In or around summer 2020, after Rabinowitz had started her own social media influencer brand, Here for the Makeup ("HFTM"), and without provocation, Rabinowitz ratcheted up her attacks on Trendmood and Shab.  For years Rabinowitz had gossiped openly about Trendmood to gain a following for her opinions, but when she became a direct competitor deriding Trendmood and converting its followers to HFTM presented more incentive to magnify such efforts due to the far greater revenue opportunity.

24.     On or about August 15, 2020 Rabinowitz's attacks stopped being centered around Trendmood and were directed at Shab personally.  Rabinowitz had previously criticized Trendmood about supporting a cosmetics product manufacturer

who Rabinowitz considered socially and racially insensitive. However, on that day through Rabinowitz's gossip Twitter handle, Here for the Tea, in response to Trendmood blocking her from commenting on Trendmood's Instagram account, she accused Shab of being a racist because a Halloween costume she wore the year prior. This immediately created a crescendo of negative commentary by Twitter and Instagram users that were Trendmood followers, and on Reddit. The result was that Trendmood lost followers on both Twitter and Instagram and saw a temporary decline in revenue.

25. Feeling like Rabinowitz's behavior had crossed a line, Trendmood on August 19, 2020 had its counsel draft and send Rabinowitz a cease and desist letter in hopes that Rabinowitz's vitriol would subside. This at least temporarily stopped Rabinowitz from any further inflammatory commentary.

26. In early November 2020, while in an online diatribe with another social media influencer, Rabinowitz intentionally involved Trendmood in the dispute. As her criticism escalated, assumedly to gain sympathy among followers and/or some advantage in the public dispute, Rabinowitz published the cease and desist letter that had been sent to her on August 19, 2020.

27. On November 12, 2020, Rabinowitz went even further when she published the false statement that Trendmood had released her personal information to the other social media influencer in an attempted doxxing campaign against her. Not only did she make this false statement, but she also published that she had "receipts" to "prove" that Trendmood had publicly released her private information.

28. Doxxing is considered a form of cyberstalking and where proven is a crime under California Penal Code § 653.2, California's law against posting harmful information on the internet. California Penal Code 653.2 is violated when a person uses an electronic device (such as a computer or a cell phone) to send, publish or make available personal identifying information or photos (i.e. "doxxing"), or post or send a harassing message about, another person if:

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

a. It is done without that person's consent; and

b. Such personal information, image or message is likely to incite or produce unwanted physical contact, injury, or harassment of that person; and

c. Your intent is to place that person in reasonable fear for his or her safety or the safety of his or her immediate family.

29. As a result of Rabinowitz's false doxxing statement, commentary of Trendmood and Shab on Instagram, Twitter and Reddit gained immediate momentum as followers of Trendmood voiced their displeasure for what they believed was a true statement by Rabinowitz regarding Trendmood's alleged doxxing against her. Specifically, many followers of Trendmood stated that they would no longer support Trendmood or buy anything it advertised while many suggested that Rabinowitz file a police report because Trendmood had committed a crime. Since Rabinowitz published the above-stated false statement regarding Trendmood doxxing her Trendmood has seen a drastic decrease in its follower base and has suffered damage to its business reputation.

## CAUSES OF ACTION

## COUNT I

## (Libel Per Se – California Civil Code § 45)

30. Trendmood realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 as if fully set forth herein.

31. "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face [i.e., libel *per se]."* Cal. Civ. Code § 45a.

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

32.    Rabinowitz made and published the defamatory statements as specifically described herein and above which among other things falsely accused Trendmood of engaging in a doxxing campaign against her and violating multiple sections of the California Penal Code including those expressly referred to above.

33.    Defendant used at least Instagram, including on and in each of her own Instagram subscriptions, accounts, identities, and handles, to write, and thereby publish, the defamatory statements described above and incorporated by reference herein, which included, that (1) Plaintiff released Defendant's personal information online in an attempted doxxing campaign; (2) Plaintiff did so in a manner that would be considered a violation of the California Penal Code; and/or (3) Defendant had proof of the same and that its intent was to use fear, threat and intimidation to silence her.

34.    On information and belief, Defendant did use other social media websites such as Twitter and Reddit to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

35.    Prior to publishing the defamatory statements, Rabinowitz was fully aware that Instagram and the other social media websites used to publish her defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide and were connected to the health, beauty, and cosmetic industries, many of which were Trendmood's followers, because Rabinowitz was a user, subscriber and account holder of Instagram and had Instagram handles and thus understood how Instagram and social media websites worked.

36.    Prior to publishing her defamatory statements, Rabinowitz was fully aware that Instagram had a membership of approximately in excess of three hundred million persons and that by publishing the defamatory statements, the defamatory statements would be read by hundreds to thousands of Instagram's membership, including Trendmood's followers, because Rabinowitz was a user, subscriber and account holder of Instagram and had Instagram handles and thus understood how Instagram and other social media websites worked.

37.     Prior to publishing her defamatory statements, Rabinowitz was fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after she did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons, because Rabinowitz was a user, subscriber and account holder of Instagram and had Instagram handles and thus understood how Instagram and other social media websites worked.

38.     Defendant published the defamatory statements described above and incorporated by reference herein fully aware that Trendmood resided in Los Angeles, California and that Trendmood was a social media influencer formed and operating in the state of California.

39.     Defendant was fully aware that her defamatory statements described above and incorporated by reference herein would cause a negative effect on Trendmood as a social influencer, i.e., Rabinowitz intended that the defamatory statements would prevent  or diminish Trendmood from operating as a social media influencer. In addition, Rabinowitz was fully aware that because of the defamatory statements, Trendmood's reputation would be damaged in the community in California and the virtual community located in the worldwide-web that were related to Trendmood's status as a social media influencer in the health, beauty and cosmetics industries.

40.     It was, is, and has always been, untrue, and false, that (1) Plaintiff released Defendant's personal information online in an attempted doxxing campaign; (2) Plaintiff did so in a manner that would be considered a violation of the California Penal Code; and/or (3) Defendant had proof of the same and that its intent was to use fear, threat and intimidation to silence her.

41.     Defendant's defamatory statements were not privileged and Trendmood did not consent to the publication of the defamatory statements. Trendmood, in fact,

implored Rabinowitz to stop the publication of the defamatory statements. Rabinowitz responded by repeating more statements that (1) Plaintiff released Defendant's personal information online in an attempted doxxing campaign; (2) Plaintiff did so in a manner that would be considered a violation of the California Penal Code; and/or (3) Defendant had proof of the same and that its intent was to use fear, threat and intimidation to silence her.

42. Prior to publishing the defamatory statements, Rabinowitz knew and otherwise was fully aware that the defamatory statements were not true.

43. Prior to publishing the defamatory statements, Rabinowitz acted in reckless disregard for the truth in her defamatory statements by not conducting any diligence, inquiry, and investigation as to whether or not the defamatory statements were true or false.

44. Prior to publishing the defamatory statements, Rabinowitz failed to use reasonable care to determine the truth or falsity of her defamatory statements by not conducting reasonable diligence, inquiry, and investigation as to whether or not the defamatory statements were true or false.

45. The hundreds to thousands of person who did read Rabinowitz's defamatory statements on Instagram and other social media websites understood the defamatory statements to be of and concerning Trendmood and were understood by the hundreds to thousands of persons to mean that (1) Plaintiff released Defendant's personal information online in an attempted doxxing campaign; (2) Plaintiff did so in a manner that would be considered a violation of the California Penal Code; and/or (3) Defendant had proof of the same and that its intent was to use fear, threat and intimidation to silence her.

46. Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that Trendmood was a social media influencer in California:

13

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

a.     The defamatory statements tended to injure Trendmood as a social media influencer, and otherwise injure Trendmood whether or not as a social media influencer;

b.     The defamatory statements exposed Trendmood to hatred, contempt, ridicule, and shame by (i) persons residing in California; (ii) persons involved and interested in health, beauty and cosmetics products and media related thereto; and (iii) those persons using the world-wide-web interested in Trendmood and health, beauty and cosmetics products and media related thereto; and

c.     The defamatory statements discouraged others from associating or dealing with Trendmood.

47.    Rabinowitz knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others, because Rabinowitz was a user, subscriber and account holder of Instagram and had Instagram handles and thus understood how Instagram and other social media websites worked.

48.    Rabinowitz's defamatory statements caused Trendmood to lose employment and income.

49.    Rabinowitz's defamatory statements caused Trendmood's California and virtual community to shun and avoid Trendmood and Shab, and further caused Trendmood's California and virtual community to not like Trendmood and Shab, stop following Trendmood, or otherwise end any, and all, connection and association to Trendmood.

50.    Trendmood's personal and professional reputation were harmed as a result of Rabinowitz's defamatory statements and such reputation is continuing to be harmed because Rabinowitz continues to make the same defamatory statements as

described and continues to permit the defamatory statements to go viral on social media websites.

51.    Trendmood sustained reputational and financial harm to his businesses, professions, and occupations as a result of the defamatory statements.

52.    Plaintiff was damaged as set forth below and as follows:

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $1,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as further set forth below.

## COUNT II

### (Libel Against Defendant)

53.    Trendmood realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 as if fully set forth herein.

54.    "Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof." Cal. Civ. Code § 45a (emphasis added). " 'Special damages' are all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other." Cal. Civ. Code § 48a.4.(b).

55.    Rabinowitz made and published the defamatory statements as specifically described herein and above which among other things falsely accused Trendmood of engaging in a doxxing campaign against her and violating multiple sections of the California Penal Code including those expressly referred to above.

56.    Rabinowitz used at least Instagram, including on and in each of her own Instagram subscriptions, accounts, identities, and handles, to write, and thereby

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

publish, the defamatory statements described above and incorporated by reference herein, which included, that (1) Plaintiff released Defendant's personal information online in an attempted doxxing campaign; (2) Plaintiff did so in a manner that would be considered a violation of the California Penal Code; and/or (3) Defendant had proof of the same and that its intent was to use fear, threat and intimidation to silence her.

57.    On information and belief, Defendant did use other social media websites such as Twitter and Reddit to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

58.    Prior to publishing the defamatory statements, Rabinowitz was fully aware that Instagram and the other social media websites used to publish her defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide and were connected to the health, beauty and cosmetic industries, many of which were Trendmood's followers, because Rabinowitz was a user, subscriber and account holder of Instagram and had Instagram handles and thus understood how Instagram and social media websites worked.

59.    Prior to publishing her defamatory statements, Rabinowitz was fully aware that Instagram had a membership of approximately in excess of three hundred million persons and that by publishing the defamatory statements, the defamatory statements would be read by hundreds to thousands of Instagram's membership, including Trendmood's followers, because Rabinowitz was a user, subscriber and account holder of Instagram and had Instagram handles and thus understood how Instagram and other social media websites worked.

60.    Prior to publishing her defamatory statements, Rabinowitz was fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after she did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons, because Rabinowitz

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

16

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

was a user, subscriber and account holder of Instagram and had Instagram handles and thus understood how Instagram and other social media websites worked.

61.  Defendant published the defamatory statements described above and incorporated by reference herein fully aware that Trendmood resided in Los Angeles, California and that Trendmood was a social media influencer formed and operating in the state of California.

62.  Defendant was fully aware that her defamatory statements described above and incorporated by reference herein would cause a negative effect on Trendmood as a social influencer, i.e., Rabinowitz intended that the defamatory statements would prevent  or diminish Trendmood from operating as a social media influencer. In addition, Rabinowitz was fully aware that because of the defamatory statements, Trendmood's reputation would be damaged in the community in California and the virtual community located in the worldwide-web that were related to Trendmood's status as a social media influencer in the health, beauty, and cosmetics industries.

63.  It was, is, and has always been, untrue, and false, that (1) Plaintiff released Defendant's personal information online in an attempted doxxing campaign; (2) Plaintiff did so in a manner that would be considered a violation of the California Penal Code; and/or (3) Defendant had proof of the same and that its intent was to use fear, threat and intimidation to silence her.

64.  Defendant's defamatory statements were not privileged and Trendmood did not consent to the publication of the defamatory statements. Trendmood, in fact, implored Rabinowitz to stop the publication of the defamatory statements. Rabinowitz responded by repeating more statements that (1) Plaintiff released Defendant's personal information online in an attempted doxxing campaign; (2) Plaintiff did so in a manner that would be considered a violation of the California Penal Code; and/or (3) Defendant had proof of the same and that its intent was to use fear, threat and intimidation to silence her.

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

17
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

65.     Prior to publishing the defamatory statements, Rabinowitz knew and otherwise was fully aware that the defamatory statements were not true.

66.     Prior to publishing the defamatory statements, Rabinowitz acted in reckless disregard for the truth in her defamatory statements by not conducting any diligence, inquiry, and investigation as to whether or not the defamatory statements were true or false.

67.     Prior to publishing the defamatory statements, Rabinowitz failed to use reasonable care to determine the truth or falsity of her defamatory statements by not conducting reasonable diligence, inquiry, and investigation as to whether or not the defamatory statements were true or false.

68.     The hundreds to thousands of person who did read Rabinowitz's defamatory statements on Instagram and other social media websites understood the defamatory statements to be of and concerning Trendmood and were understood by the hundreds to thousands of persons to mean that (1) Plaintiff released Defendant's personal information online in an attempted doxxing campaign; (2) Plaintiff did so in a manner that would be considered a violation of the California Penal Code; and/or (3) Defendant had proof of the same and that its intent was to use fear, threat and intimidation to silence her.

69.     Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that Trendmood was a social media influencer in California:

        a.      The defamatory statements tended to injure Trendmood as a social media influencer, and otherwise injure Trendmood whether or not as a social media influencer;

        b.      The defamatory statements exposed Trendmood to hatred, contempt, ridicule, and shame by (i) persons residing in California; (ii) persons involved and interested in health, beauty, and cosmetics products and media related

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

thereto; and (iii) those persons using the world-wide-web interested in Trendmood and health, beauty and cosmetics products and media related thereto; and

        c.     The defamatory statements discouraged others from associating or dealing with Trendmood.

70.    Rabinowitz knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others, because Rabinowitz was a user, subscriber and account holder of Instagram and had Instagram handles and thus understood how Instagram and other social media websites worked.

71.    Rabinowitz's defamatory statements caused Trendmood to lose employment and income.

72.    Rabinowitz's defamatory statements caused Trendmood's California and virtual community to shun and avoid Trendmood and Sahb, and further caused Trendmood's California and virtual community to not like Trendmood and Shab, stop following Trendmood, or otherwise end any, and all, connection and association to Trendmood.

73.    Trendmood's personal and professional reputation were harmed as a result of Rabinowitz's defamatory statements and such reputation is continuing to be harmed because Rabinowitz continues to make the same defamatory statements as described and continues to permit the defamatory statements to go viral on social media websites.

74.    Trendmood sustained reputational and financial harm to his businesses, professions, and occupations as a result of the defamatory statements.

75.    Plaintiff was damaged as set forth below and as follows:

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

$1,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as further set forth below.

## COUNT III

### (Injunctive Relief Against Defendant)

76.     Trendmood realleges and incorporates by reference the allegations contained in paragraphs 1 through 75 as if fully set forth herein.

77.     Rabinowitz has caused irreparable harm to Trendmood's businesses, in reputation, in income, in the goodwill in the business that no amount of damages could adequately compensate Trendmood for injuries it sustained, is sustaining and will sustain, because Rabinowitz's defamatory statements continue to be posted on internet websites such as Instagram and Twitter, and Rabinowitz continues to assert that the statements are true thereby destroying Trendmood's reputation and business in an ongoing and continuous manner.

78.     Rabinowitz continues to publish the defamatory statements on social media making it impossible for Trendmood to operate as a social media influencer in the same capacity as it did prior to the defamatory statements and thus limiting Trendmood's income, making the harm ongoing.

79.     Rabinowitz's conduct is a substantial factor in Trendmood's ongoing harm.

80.     Trendmood prays this court for an order enjoining Rabinowitz from making and publishing any, and all, defamatory statements that (1) Plaintiff released Defendant's personal information online in an attempted doxxing campaign; (2) Plaintiff did so in a manner that would be considered a violation of the California Penal Code; and/or (3) Defendant had proof of the same and that its intent was to use fear, threat and intimidation to silence her.

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

81.   Plaintiff prays this court for an injunction ordering to retract the defamatory statements and to take the defamatory statements down from the websites in which the statements were made and published; specifically Rabinowitz should retract and take down any, and all, defamatory statements she made and published that (1) Plaintiff released Defendant's personal information online in an attempted doxxing campaign; (2) Plaintiff did so in a manner that would be considered a violation of the California Penal Code; and/or (3) Defendant had proof of the same and that its intent was to use fear, threat and intimidation to silence her; and any iteration of such statements.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, Trendmood, prays for judgment against Rabinowitz as follows:

1.   Award Trendmood $1,000,0000 against Rabinowitz in non-economic damages;

2.   Order an injunction permanently restraining and enjoining Rabinowitz as set forth in Claim III including:

a.   Preventing Rabinowitz from making and publishing the defamatory statements or any iteration of the defamatory statements as set forth above and herein;

b.   Ordering Rabinowitz to retract the defamatory statements as set forth above and herein; and

c.   Ordering Rabinowitz to direct any, and all, websites that Rabinowitz posted the defamatory statements as set forth above and herein, to delete the defamatory statements;

3.   For Trendmood's actual damages, together with prejudgment interest, according to proof;

4.    That Trendmood be awarded its costs and expenses incurred herein, including reasonable attorney's fees to the fullest extent authorized by law;

GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

5.     Awarding Trendmood such additional and further relief as the Court deems just and proper.

Date:  November 30, 2020          **GLOBAL LEGAL LAW FIRM**

By:  */s/ Christopher R. Dryden*
     Christopher R. Dryden, Esq.
     Attorneys for Plaintiff Trendmood, Inc.

## **DEMAND FOR JURY TRIAL**

Plaintiff, TRENDMOOD, INC., hereby, by and through its counsel of record, requests and demands that the case and matters therein be tried in front of a jury.

Date:  November 30, 2020          **GLOBAL LEGAL LAW FIRM**

By:  */s/ Christopher R. Dryden*
     Christopher R. Dryden, Esq.
     Attorneys for Plaintiff Trendmood, Inc.

**GLOBAL LEGAL LAW FIRM**
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
(888) 846-8901

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF