UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| TRENDMOOD, INC., a California corporation, | Case No. 2:20-cv-10877-MCS-RAO |
|---|---|
| Plaintiff, | **ORDER RE: MOTION TO DISMISS OR STRIKE THIRD AMENDED COMPLAINT (ECF NO. 36)** |
| v. | |
| SAMANTHA RABINOWITZ, an individual; and DOES 1–10, inclusive, | |
| Defendants. | |

Defendant Samantha Rabinowitz moves to dismiss the Third Amended Complaint of Plaintiff Trendmood, Inc. (TAC, ECF No. 35.) In the alternative, Rabinowitz moves to strike the TAC pursuant to California's anti-SLAPP statute. (Mot., ECF No. 36.) Trendmood filed an opposition brief, and Rabinowitz filed a reply. (Opp'n, ECF No. 37; Reply, ECF No. 38.) The Court heard oral argument on August 30, 2021.

I.     **BACKGROUND**

According to the TAC, Trendmood is a health, beauty, and cosmetics influencer that delivers marketing content to followers on social media platforms, including Instagram and Twitter. (TAC ¶¶ 2, 9–18.) As an "online gossiper," Rabinowitz has

publicly criticized Trendmood and its Chief Marketing Officer, Sophie Shab, for years. (*Id.* ¶¶ 3–4, 19–21.) For example, Rabinowitz posted four comments about Trendmood and Shab between 2017 and 2018: "trendmood is Dirty AF"; "Trendmood is a legit [expletive]"; "TRENDMOOD, the SNAKE!"; and "Good old @trendmood leaks again." (*Id.* ¶¶ 67–70, 81–84 (errors preserved).) Rabinowitz's comments caused Trendmood to lose profits and followers. (*Id.* ¶¶ 71–72, 85–86.)

In summer 2020, after launching a competing influencer brand, Rabinowitz escalated her attacks on Trendmood and Shab, accusing Trendmood of supporting an allegedly socially and racially insensitive cosmetics product manufacturer, and accusing Shab of being racist. (*Id.* ¶¶ 23–27.) Trendmood sent Rabinowitz a cease-and-desist letter on August 19, 2020. (*Id.* ¶ 28.) In November 2020, in connection with a dispute with a different social media influencer, Rabinowitz published Trendmood's letter and posted the following statement on Twitter (the "Tweet"):

> amanda, don't you or your boyfriend ever, EVER threaten me. i haven't broken ANY law. and to Trendmood, who is giving out my personal information, i have receipts and you'll also be a party to the action.

(TAC Ex. A, ECF No. 35; *see* TAC ¶¶ 29–30.) Social media users discussed the Tweet on social media websites Twitter, Instagram, and Reddit. (TAC ¶ 30a.)[1] In response, some social media users understood Rabinowitz to accuse Trendmood of "doxing" Rabinowitz—in other words, "researching and publicly broadcasting private or identifying information" about her and violating criminal cyberstalking and stalking laws. (*Id.* ¶ 4 n.1; *see id.* ¶¶ 30–34, 29a–30a.) As a result of Rabinowitz's conduct, Trendmood suffered diminished impressions and engagements on its posts, resulting in diminished revenue. (*Id.* ¶¶ 30a–34a, 35.)

---

[1] The TAC numbers two consecutive sets of paragraphs 29–34. The Court cites the second set of paragraphs as 29a–34a.

2

Trendmood asserts three claims in the TAC: (1) libel per quod, (2) intentional interference with prospective economic advantage, and (3) negligent interference with prospective economic advantage. (*Id.* ¶¶ 36–89.)

## II. LEGAL STANDARDS

### A. Anti-SLAPP Motion to Strike

California Code of Civil Procedure section 425.16 permits a special motion to strike a strategic lawsuit against public participation ("SLAPP"). Such a motion allows courts to dismiss at an early stage unmeritorious litigation that challenges various kinds of protected speech. *See* Cal. Civ. Proc. Code § 425.16(b)(1); *Kashian v. Harriman*, 98 Cal. App. 4th 892, 905 (2002). Federal courts give full effect to the anti-SLAPP statute. *See United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999).

Anti-SLAPP motions are subject to a two-step analysis with shifting burdens. First, the movant must make a threshold showing that the challenged claim arises from an "act . . . in furtherance of [the movant's] right of petition or free speech" within the meaning of California Civil Procedure Code section 425.16(e). *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (internal quotation marks omitted). If the movant satisfies this threshold showing, the burden shifts to the claimant to establish a reasonable probability of prevailing by demonstrating that the challenged claim is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* (internal quotation marks omitted).

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

### A. Anti-SLAPP Motion to Strike

Renewing an argument from her prior motion, Rabinowitz contends the action is subject to an anti-SLAPP motion to strike. (Mot. 17–22.) The Court previously held that "Rabinowitz [did] not meet her burden to show the challenged claim arises from an act in furtherance of Rabinowitz's right of free speech" because "[t]he relation between the Tweet and the asserted issues of public interest is too tenuous to merit anti-SLAPP protection." (Prior Order 4–5, ECF No. 26 (citing, *inter alia*, *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133 (2019)).)

At the hearing, counsel represented that Rabinowitz reasserted this argument to preserve the issue for possible appeal. Rabinowitz's brief does not engage with the Court's analysis from the prior motion, and the new arguments she presents do not show the Court should deviate from its prior conclusion based on any newly pleaded facts or a recast public interest. (*See* Mot. 20–22.) The Court denies the motion to strike.[2]

---

[2] Presumably in response to the motion to strike, Trendmood asks for leave to conduct discovery and relies upon a declaration and exhibits outside the four corners of the TAC.

4

### B. Tortious Conduct

Before addressing the merits of the motion to dismiss, the Court again must determine what the alleged tortious conduct is. The TAC does not clarify which of Rabinowitz's acts support which of Trendmood's claims.

In its order on the prior motion to dismiss, the Court determined that Trendmood's libel claims rested solely on the Tweet, and that Trendmood's pleading did not give Rabinowitz fair notice of the claims against her to the extent the claims are predicated on other acts in an alleged years-long sequence of adversarial conduct. (Prior Order 3 & n.1.) At the hearing on the instant motion, counsel confirmed that Trendmood predicates its libel claim in the TAC solely on the Tweet. As pleaded, however, the TAC still appears confused as to whether Trendmood's libel per quod claim pertains to statements other than the Tweet. (*See, e.g.*, TAC ¶ 23 (titling section "Rabinowitz's false statement*s*" (emphasis changed)); *id.* ¶ 38 (charging Rabinowitz with publishing "defamatory statement*s*" (emphasis added)); *id.* ¶ 40 ("The statements *and similar ones published by Rabinowitz* alleged that Trendmood is part of a doxing campaign against Rabinowitz." (emphasis added)).) The TAC also does not clarify whether the claim is based on publications Rabinowitz made on other social media websites, or plead facts plausibly indicating that Rabinowitz published the allegedly defamatory statement to other websites. (*See id.* ¶ 30 (indicating the Tweet "was eventually published on Instagram and discussed on Reddit" without stating facts indicating Rabinowitz published the statement on these platforms).) Consistent with counsel's representation at the hearing, the Court again concludes that the TAC fails to give fair notice of the claim to the extent Trendmood rests it on any statement other than the original Tweet. *Twombly*, 550 U.S. at 555.

---

(Opp'n 24–25.) Given the Court's disposition on the motion to strike, the Court denies the request for leave to conduct discovery and does not consider information outside the pleadings in evaluating the motion to dismiss.

The interference claims are new to the TAC. Trendmood alleges that the conduct undergirding these claims are Rabinowitz's "comments about Trendmood and its founder and creator – Sophie Shab." (TAC ¶¶ 67, 81.) Immediately thereafter, the TAC details four statements Rabinowitz posted between November 2017 and May 2018. (TAC ¶¶ 68–70, 82–84.) Rabinowitz understands the claims to pertain only to these statements. (*See* Mot. 14 (observing that the interference claim is not founded on the Tweet).) In its brief and at the hearing, Trendmood argued that it intended to predicate the interference claims on "Rabinowitz's comments about Trendmood and the alleged release of Rabinowitz's personal identifiers"—in other words, the four posts *and* the Tweet. (*See* Opp'n 9.) Counsel conceded at the hearing that Trendmood does not specifically state that the Tweet supports the interference claims, but he contended that the Tweet is incorporated by reference into these claims. (*See* TAC ¶¶ 36, 62 (incorporating allegations from prior claims).) Given what Trendmood pleads in the body of the interference claims, however, the Court declines to infer that Trendmood rests the interference claims on the Tweet or any other "comments" Trendmood fails to identify in the TAC. (TAC ¶¶ 67, 81.) Trendmood does not give fair notice of the interference claims to the extent they are based on any statements but the four posts from 2017 and 2018. *Twombly*, 550 U.S. at 555.

### C. Libel Per Quod

"Libel is a false and unprivileged publication . . . which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. Libel per quod occurs "if the reader would be able to recognize a defamatory meaning" in a statement "only by virtue of his or her knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons." *Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 1217, 1226–27 (2017) (internal quotation marks omitted). Libel requires a claimant to plead five elements: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged,

1  and (5) has a natural tendency to injure or causes special damage." *Sanders v. Walsh*,
2  219 Cal. App. 4th 855, 862 (2013) (internal quotation marks omitted) (discussing
3  defamation claims generally).
4      Rabinowitz argues that Trendmood has not pleaded facts showing the Tweet is
5  reasonably susceptible to the defamatory meaning Trendmood claims. (Mot. 4–6.) The
6  Court agrees. Whether a statement carries a defamatory factual imputation is a question
7  of law for courts to decide. *Issa v. Applegate*, 31 Cal. App. 5th 689, 703 (2019).
8  Trendmood asserts that the Tweet insinuates that Trendmood violated criminal
9  cyberstalking and stalking laws by "giving out [Rabinowitz's] personal information."
10 (TAC ¶¶ 30, 34, 29a–30a.) Trendmood recounts responses to the Tweet by social media
11 users. (*Id.* ¶ 33.) Neither the responses nor the pleaded context in which Rabinowitz
12 published the Tweet insinuates criminal acts by Trendmood. For example, on the facts
13 pleaded, Rabinowitz's Tweet could be read to mean Trendmood had given her name to
14 a third party, such as the "amanda" mentioned in the first half of the publication. (TAC
15 Ex. A.) Alternatively, the Tweet could be read to insinuate Trendmood publicly
16 disclosed private facts about Rabinowitz, giving rise to a civil tort claim. *See Moreno*
17 *v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1129–30 (2009) (setting forth
18 elements of public disclosure of private facts). Indeed, the responses Trendmood
19 includes in the TAC indicate the Tweet carries a meaning that Trendmood engaged in
20 nonactionable immoral behavior or an act for which there is civil liability—not criminal
21 acts of cyberstalking or stalking. (*E.g.*, TAC ¶ 33 ("Countersue for harassment and
22 Intentional Infliction of Emotional Distress[.]"); *id.* ("You honestly have no morals.").)
23 Considering the "totality of the circumstances," the Court finds that Trendmood fails to
24 plead facts plausibly showing the Tweet carries the meaning that Trendmood engaged
25 in criminal cyberstalking and stalking. *Issa*, 31 Cal. App. 5th at 703; *see also Eclectic*
26 *Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("[W]hen
27 faced with two possible explanations, only one of which can be true and only one of
28 which results in liability, plaintiffs cannot offer allegations that are merely consistent

with their favored explanation but are also consistent with the alternative explanation." (internal quotation marks omitted)).

Rabinowitz further challenges the adequacy of Trendmood's pleading of the falsity element of defamation. (Mot. 6 n.3.) Trendmood does not address this argument in her brief. (*See* Opp'n 15–17 (indicating Trendmood would "address the elements in *seriatim*," but conclusorily arguing that the insinuation of criminal activity is false).) The Court deems the argument conceded. *See, e.g.*, *John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (deeming issue waived where party "failed to develop any argument"); *City of Arcadia v. EPA*, 265 F. Supp. 2d 1142, 1154 n.16 (N.D. Cal. 2003) ("[T]he implication of this lack of response is that any opposition to this argument is waived."). Trendmood fails to plead facts indicating that Rabinowitz's statement that Trendmood "g[ave] out [her] personal information" is false. (TAC Ex. A.)[3]

Rabinowitz also contends that Trendmood fails to adequately plead special damages. (Mot. 6–8.) The Court previously dismissed Trendmood's libel per quod claim for failure to plead special damages. (Prior Order 6–7.) A plaintiff asserting libel per quod must plead and prove special damages, which are damages the claimant suffers to "property, business, trade, profession, or occupation." Cal. Civ. Code §§ 45a, 48a(d)(2). "[S]pecial damages are defined narrowly to encompass only economic loss." *Gomes v. Fried*, 136 Cal. App. 3d 924, 939 (1982). A claimant in federal court must "specifically state[]" items of special damage. Fed. R. Civ. P. 9(g); *see Todd v. Lovecruft*, No. 19-cv-01751-DMR, 2020 U.S. Dist. LEXIS 2309, at *66–67 (applying Rule 9(g) to libel per quod claim under California law); *accord Gomes*, 136 Cal. App. 3d at 940 ("[S]pecial damages must be pled and proved precisely."). The TAC does not

---

[3] "Because a showing of actual malice necessarily depends on the falsity of the statements at issue," *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 270 n.13 (9th Cir. 2013), the Court declines to address Rabinowitz's argument that Trendmood fails to plead actual malice. (Mot. 8–11.)

8

plead special damages with any specificity. Trendmood vaguely avers that it lost followers, impressions, engagements, income, and business reputation. It notes that it received less revenue and fewer clicks between July and December 2019 than it received between July and December 2020. (TAC ¶¶ 22, 30a–34a, 35.) Trendmood argues that it pleaded special damages "to the tune of over $100,000." (Opp'n 19 (citing TAC ¶¶ 33a–34a, 35).) Trendmood provides this numerical sum for the first time in its brief without providing facts in its pleading showing its calculations. The pleading does not articulate how Trendmood determined its lost revenue or any facts indicating which business opportunities it lost due to the Tweet. Trendmood alleges it received less revenue in the last six months of 2020 compared with the last six months of 2019 without pleading facts establishing how the Tweet created that decline in revenue. Further, Trendmood provides no estimation of the amount of economic loss due to lost followers, impressions, engagements, and business reputation. Trendmood cites a years-old study of the value of social media impressions generally without using it to calculate how fewer clicks, impressions, and engagements translate to pecuniary loss to Trendmood in particular. (*See id.* ¶¶ 31a–34a, 35.) In short, Trendmood does not specifically state its special damages. *See Martin v. Wells Fargo Bank*, No. 2:17-cv-03425-RGK-SS, 2018 U.S. Dist. LEXIS 229513, at *6 (C.D. Cal. Jan. 18, 2018) (finding special damages insufficiently pleaded on the basis that plaintiff "provides no estimation of the amount of pecuniary loss suffered, and the opportunities allegedly lost are impermissibly vague").

For these three independent reasons, the Court dismisses the libel per quod claim.

**D.  Intentional and Negligent Interference with Prospective Economic Advantage**

To state a claim of intentional interference with prospective economic advantage, a claimant must plead "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful

|   |   |
|---|---|
| 1 | acts designed to disrupt the relationship; (4) actual disruption of the relationship; and |
| 2 | (5) economic harm proximately caused by the defendant's action." *Roy Allan Slurry* |
| 3 | *Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017). Similarly, a negligent |
| 4 | interference claim requires pleading "(1) the existence of an economic relationship |
| 5 | between the plaintiff and a third party containing the probability of future economic |
| 6 | benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the |
| 7 | defendant's knowledge (actual or construed) that the relationship would be disrupted if |
| 8 | the defendant failed to act with reasonable care; (4) the defendant's failure to act with |
| 9 | reasonable care; (5) actual disruption of the relationship; and (6) economic harm |
| 10 | proximately caused by the defendant's negligence." *Redfearn v. Trader Joe's Co.*, 20 |
| 11 | Cal. App. 5th 989, 1005 (2018), *disapproved on other grounds by Ixchel Pharma, LLC* |
| 12 | *v. Biogen, Inc.*, 9 Cal. 5th 1130, 1148 (2020). |
| 13 | Rabinowitz challenges Trendmood's pleading of the existence of prospective |
| 14 | business relationships. (Mot. 12, 16.) In response, Trendmood argues it "presented |
| 15 | evidence of specific actual or prospective economic relationships" without citing any |
| 16 | allegations in the TAC to support its argument. (Opp'n 9.) Both species of interference |
| 17 | claims require a plaintiff to plead allegations that the defendant's conduct "interfered |
| 18 | with [a] relationship with a particular individual." *UMG Recordings, Inc. v. Global* |
| 19 | *Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1117–18 (C.D. Cal. 2015) (alteration in |
| 20 | original) (internal quotation marks omitted). The TAC cursorily identifies prospective |
| 21 | business relationships between Trendmood and "its current and prospective purchasers |
| 22 | and followers of Trendmood on social media." (TAC ¶¶ 63, 78.) This broad level of |
| 23 | generality does not give Rabinowitz sufficient notice of the relationships with which |
| 24 | Trendmood alleges Rabinowitz interfered. For example, Trendmood does not plead |
| 25 | facts from which one may infer that any given follower is or was a prospective purchaser |
| 26 | of Trendmood-promoted products. Trendmood does not present facts from which the |
| 27 | Court may infer prospective business relationships between Trendmood and particular |
| 28 | purchasers or followers. *Cf. Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2013 |

U.S. Dist. LEXIS 66565, at *31 (N.D. Cal. May 8, 2013) (dismissing interference claim where "Plaintiff does not specifically identify any of these employees and customers" with whom defendant interfered).

Rabinowitz also argues that Trendmood has not pleaded facts demonstrating the independent wrongfulness of her posts. (Mot. 13–14, 16.) Trendmood claims it need not plead facts supporting wrongfulness to state an intentional interference claim. (Opp'n 8–9 (citing *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998)).) Trendmood's cited authority demonstrates that Trendmood is wrong. *Quelimane*, 19 Cal. 4th at 55 (observing that, unlike intentional interference with prospective economic relations, the tort of intentional interference with an existing contract does not require a showing of wrongfulness); *see also Ixchel*, 9 Cal. 5th at 1142 ("[I]ntentionally interfering with prospective economic advantage requires pleading that the defendant committed an independently wrongful act." (citation omitted)). Trendmood fails to plead how Rabinowitz's posts were independently wrongful. In its brief, Trendmood contends that Rabinowitz's statements are "independently tortious" because they interfered with Trendmood's "ongoing economic relationship[s] with its thousands of followers." (Opp'n 11.) Tortious interference with prospective economic relations is not wrongful independent of itself. To the extent Trendmood argues that the posts are independently wrongful because they amount to tortious interference with existing contractual relations, Trendmood does not plead facts showing the existence of contracts between Trendmood and its followers, let alone facts establishing other elements of the tort. *See Ixchel*, 9 Cal. 5th at 1141 (listing "the existence of a valid contract between the plaintiff and a third party" as the first element of an intentional interference with contractual relations claim).[4]

---

[4] Although the Court determined that the interference claims as pleaded are not based on the Tweet, the Court observes that Trendmood also has not established the independent wrongfulness of the Tweet because Trendmood fails to adequately plead facts showing the Tweet is libelous. *See Toranto v. Jaffurs*, 297 F. Supp. 3d 1073, 1099

For these independent reasons, the interference claims must be dismissed.[5]

### E. Leave to Amend

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted with "extreme liberality." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (internal quotation marks omitted). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Nine months have passed since Trendmood filed this action, and Trendmood has attempted to plead its case four times. Trendmood does not request further leave to amend in its brief. (*See generally* Opp'n.) The Court dismissed the libel per quod claim for similar reasons it dismissed the claim on a prior motion to dismiss, indicating that further amendment would be futile. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (affirming denial of leave to amend where amended complaint failed to cure defects identified in order dismissing prior complaint). Although the motion does not raise the issue, the interference claims are apparently untimely as pleaded. California law provides a two-year statute of limitations for such claims. Cal. Civ. Proc. Code § 339(1); *Knoell v. Petrovich*, 76 Cal. App. 4th 164, 168

---

(S.D. Cal. 2018) (endorsing argument that tortious interference claim failed because plaintiff did not allege defamatory statements to support a wrongful act); *In re Circuit Breaker Litig.*, 984 F. Supp. 1267, 1283 (C.D. Cal. 1997) (dismissing tortious interference claim where court previously dismissed defamation claim).

[5] Because Trendmood fails to plead these fundamental elements, the Court declines to consider Rabinowitz's additional grounds for dismissal of the interference claims. (Mot. 12–17.)

(1999). Rabinowitz posted the statements undergirding the interference claims over two years before Trendmood initiated this action. (*See* TAC ¶¶ 68–70, 82–84.) Repleading untimely claims would be futile.

Weighing the *Foman* factors, the Court declines to exercise its discretion to give Plaintiffs further leave to amend.

## IV. CONCLUSION

The Court denies the motion to strike and grants the alternative motion to dismiss without leave to amend. The Court directs the Clerk to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: August 31, 2021

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE